*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONALD DEVONNE MOTEN, JR.,

        Defendant-Appellant.

UNPUBLISHED
August 06, 2026
2:05 PM

No. 371817
Wayne Circuit Court
LC No. 23-005625-01-FC

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of voluntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 7 to 22 years and 6 months' imprisonment for the manslaughter conviction to be served consecutively to a 2-year sentence imposed for felony-firearm. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the shooting death of Joe Louis Seals in the city of Detroit. On an evening in October 2023, defendant's wife, his minor children, neighbors, and neighbors' family members were gathered in the parking lot of an abandoned auto parts store next to defendant's home. Several of the children began arguing and adults then became involved. Seals, an adult whose father and uncle lived across the street from defendant, arrived and attempted to intervene. At some point, Seals either punched one of defendant's sons or was struck by one of defendant's sons in the face. An altercation ensued. Defendant's oldest son[1] picked Seals up and slammed him to the ground, and some of defendant's children began punching and kicking Seals while he

---

[1] Defendant has five sons and one daughter, all of whom were present on the day of the shooting. The three oldest sons and the daughter testified at trial. Because each of the sons have similar names and initials, and because some were minors when they testified, we will refer to the children by their age in relation to each other to distinguish them as witnesses.

-1-

was on the ground. A man, later identified as "G. Herbo," was nearby and handed Seals a gun. Seals stood up and began shooting at defendant's daughter, hitting her in the leg with a bullet.

At trial, defendant testified that he was inside his house when he saw his wife arguing with a man he did not recognize. He left his house after he witnessed Seals get into a fight with his children, and he saw "G. Herbo" give Seals a gun. After observing that Seals had a firearm, he ran into his house to retrieve his wife's handgun. When defendant returned to the parking lot, he realized that his daughter had been shot. Defendant shot Seals while he was on the ground. After this, Seals stood up and ran behind a vehicle.

Defendant testified that he followed Seals behind the vehicle where, according to defendant, Seals was lying on the ground raising his gun. Seeing this, according to defendant, caused him to shoot Seals a second time. Seals died as a result of multiple gunshot wounds including one shot to his chest. Although defendant's family members also testified that Seals had a gun in his hand during the altercation, at least one witness unrelated to defendant testified that Seals did not have a gun when defendant shot him. The trial court also admitted a surveillance video recovered by the police that depicted the shootings.

Defendant was charged with second-degree murder, MCL 750.317, two counts of felony-firearm, and one count of possession of a firearm by a convicted felon. The jury found defendant guilty of the lesser offense of voluntary manslaughter and one count of felony-firearm but acquitted him of the other charges. The trial court sentenced defendant as given above.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his conviction of manslaughter because the prosecution failed to prove that defendant did not act in self-defense. We disagree.

We review challenges to the sufficiency of the evidence de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). This Court must view the evidence in the light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Alter*, 255 Mich App 194, 201-202; 659 NW2d 667 (2003). We must also "draw reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). This Court will not interfere with the trier of fact's determination of the weight of the evidence or credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

"Voluntary manslaughter requires a showing that (1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Smith*, 351 Mich App 1, 22; 34 NW3d 593 (2024) (quotation marks and citation omitted). The distinguishing element between murder and voluntary manslaughter is malice, "which in voluntary manslaughter

is negated by the presence of provocation and heat of passion." *People v Yeager*, 511 Mich 478, 489-490; 999 NW2d 490 (2023) (quotation marks and citation omitted).

Under the common law, "the affirmative defense of self-defense justified the killing of another person if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (quotation marks and citation omitted). "[O]nce the defendant injects the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," the burden shifts to the prosecution to "disprov[e] the common law defense of self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010) (quotation marks and citation omitted). The circumstances in which a person may use deadly force in self-defense are also codified by the Self-Defense Act (SDA), MCL 780.971 *et seq.*, which provides in relevant part as follows:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1)(a).]

"[T]he touchstone of *any* claim of self-defense, as a justification for homicide, is *necessity*." *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002).

Here, the prosecution presented sufficient evidence from which a rational trier of fact could reject defendant's self-defense claim and find defendant guilty of voluntary manslaughter. Defendant testified that after he saw "G. Herbo" hand a gun to Seals, he went into his house to retrieve his wife's firearm. He testified that he was only thinking of protecting his family after he heard gunshots. He returned to the parking lot and moved toward Seals. Defendant testified that when he approached Seals, who was sitting on the ground, Seals raised the gun at defendant. Defendant responded by shooting Seals: he explained that he feared for his life because Seals had just shot his daughter and raised his gun at him.

After defendant shot Seals once, he watched Seals stand and run toward the vehicles in the parking lot. While defendant explained that he followed Seals because he was afraid Seals was still armed, the video and testimony showed that, instead of retreating or attending to his family, defendant pursued Seals and shot him again while he was lying on the ground. Defendant saw Seals fall back after the second shot.

The record does not support that defendant "honestly and reasonably believe[d] that the use of deadly force [was] necessary to prevent the imminent death of or imminent great bodily harm to himself . . . or to another individual" such that insufficient evidence supported the jury's verdict. MCL 780.972(1)(a). Defendant testified that he initially left the area, and later he did

nothing when Seals ran by his family members while leaving the immediate area even though he thought Seals still had a gun. Then, with the situation apparently stable and no obvious imminent danger, defendant testified that he followed Seals and shot Seals again, supposedly because Seals started to raise his gun toward him. Defendant then returned to his house while his family members remained in the parking lot where Seals still had access to a gun and defendant not knowing if Seals was dead. A rational trier of fact could find defendant guilty based on these facts.

Moreover, the jury was in the best position to consider conflicting testimony and assess the credibility of the witnesses, some of whom it could have found less credible. The jury heard conflicting testimony regarding whether Seals was armed when defendant shot him the second time. At least one witness testified that Seals was unarmed, some were not sure, and some of defendants' children testified that Seals still had the gun. With respect to credibility, and for example, the jury heard defendant's youngest son first testify that he did not see defendant shoot Seals more than once, later testify that he previously told the police he heard defendant say "[y]ou shot my daughter" before following Seals and shooting him again, and admit to lying both to the police and while testifying. The youngest son also admitted that he and one of his brothers had agreed to tell the police that they did not know who shot Seals. Similarly, the oldest son testified that he told the police that an unknown person came by and picked up Seals's gun after defendant's wife wrestled Seals to the ground, that he shook his head when the police asked him if he knew who shot Seals, and admitted that he did not tell the police what he knew because he did not want to get defendant in trouble.

Finally, the jury saw a surveillance video that depicted defendant approaching Seals, defendant shooting him the first time while Seals was seated on the ground, Seals standing up and running away from defendant and his family members, defendant pursuing Seals, and defendant shooting Seals a second time, though the view of the second shooting was obstructed.

Although defendant testified that he shot Seals to protect himself and his family, a rational juror could infer that he was acting out of passion after being provoked when Seals shot his daughter, *Smith*, 351 Mich App at 22, and that he did not "honestly and reasonably believe" his life or his family's lives were "in imminent danger or that there [was] a threat of serious bodily harm and that it [was] necessary to exercise deadly force to prevent such harm." *Dupree*, 486 Mich at 707 (quotation marks and citation omitted). Accordingly, a rational trier of fact could conclude, beyond a reasonable doubt, that the prosecution disproved that defendant acted in self-defense.

## III. OFFENSE VARIABLE 5

Defendant next argues that the trial court erred by assessing 15 points for Offense Variable (OV) 5 because the prosecution failed to prove by a preponderance of the evidence that the victim's family members suffered a serious psychological injury. We disagree.

"When reviewing a trial court's scoring decision, the trial court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Baskerville*, 333 Mich App 276, 291; 963 NW2d 620 (2020) (quotation marks and citation omitted). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018).

This Court reviews the trial court's application of the facts to the law de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). This Court also reviews "[t]he proper interpretation and application of the statutory guidelines" de novo as a question of law. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014).

OV 5 applies if a defendant's homicide-related crime causes psychological injury to a member of the victim's family. *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017). "A trial court properly assesses 15 points for OV 5 when '[s]erious psychological injury requiring professional treatment occurred to a victim's family.' " *Id*., quoting MCL 777.35(1)(a) (alteration in original). MCL 777.35(2) provides that the psychological injury "may require professional treatment" however, the fact that the family did not seek psychological treatment "is not conclusive." MCL 777.35(2). "The statute does not require proof that a victim's family member has already sought or received, or intends to seek or receive, professional treatment." *Calloway*, 500 Mich at 186. Although proof of psychological treatment is not necessary, the statute requires "a serious psychological injury" or an injury that has "important or dangerous possible consequences." *Id*. (quotation marks and citation omitted). Grief alone, however, is insufficient to constitute serious psychological trauma under OV 5. *People v Bailey*, 330 Mich App 41, 62; 944 NW2d 370 (2019).

At sentencing, Seals's sister stated that her daughter, Seals's niece, cried every day. She reported that Seals had an 11-year-old daughter who called her every day for money. Seals's sister explained that she could not afford to financially support another child, that she missed her brother every day, and that she had to manage her children's emotional turmoil over the loss of their father figure.

Seals's niece told the trial court that Seals was a father figure to her and her siblings. She stated that she was hurting and that the grieving process was very hard. Seals's niece explained that she experienced suicidal thoughts and was having a hard time dealing with Seals's death. Based on the niece's testimony that she was having suicidal tendencies, along with the statements from Seals's sister regarding the effect Seals's death was having on his family, the trial court scored OV 5 at 15 points.

The trial court did not clearly err in this regard because the statements at sentencing supported the score by a preponderance of the evidence. Even though professional treatment had not yet been sought, the nature and description of the psychological effect of Seals's death on his family members indicated that such treatment "may be necessary in the future." *Baskerville*, 333 Mich App at 293.

## IV. JURY REQUESTS FOR TESTIMONY

Defendant raises additional issues in a Standard 4 brief. He first argues that the trial court erred by refusing the jury's requests for a recording or a transcript of his children's testimony and failing to explain to the jury why it denied the requests. Related to these alleged errors, defendant argues that his counsel was ineffective by not objecting to the trial court's ruling and instruction to the jury. We disagree.

## A. DEFENDANT WAIVED HIS CHALLENGE TO THE TRIAL COURT'S RESPONSES

The applicable court rule for when a jury requests review of testimony during deliberations is MCR 2.513(P), which states:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

Thus, "[a] defendant does not have a right to have a jury rehear testimony." *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000).[2] "Rather, the decision whether to allow the jury to rehear testimony is discretionary and rests with the trial court." *Id.* (citations omitted). That said, in *Carter*, our Supreme Court provided guidance in a footnote about exercising that discretion:

> While it is true that trial transcripts often are not prepared until well after trial, we caution against instructing the jury in this manner as such instruction forecloses to the jury the possibility of later reviewing the requested testimony, e.g., by having the court reporter read back the testimony, and consequently, violates the court rule. However, we also note that, given that the jury made the request for the testimony of four witnesses only fifteen minutes into deliberations, the trial court could have properly refused the request and instructed the jury to continue deliberating had it done so in a manner which did not foreclose the possibility of having the testimony reviewed at a later time. [*Carter*, 462 Mich at 213-214 n 10.]

Here, the jury first requested a recording of defendant's three sons' trial testimony and, after some discussion with the attorneys, the trial court responded that "the recordings are not available" and that the jury needed to rely on its collective memory. Later, the jury requested transcripts of the same testimony and, again, after discussing the issue with the attorneys, the trial court told the jury to rely on its collective memory because no transcripts were available.

---

[2] The Michigan Court Rule at issue in *Carter* was MCR 6.414(H). *Carter*, 462 Mich at 208, 210-211. Subsection MCR 6.414(H) was subsequently renumbered to MCR 6.414(J), though the language of the subsection remained the same. This court rule was then repealed and replaced by MCR 2.513(P). MCR 6.414(J); MCR 2.513(P). The relevant language remains substantively the same.

But to preserve an issue regarding a jury request, a party must object on the record. *Id*. at 214. Defense counsel, however, agreed to the trial court's responses to the jury's requests for a recording or a transcript of certain testimony. If defense counsel expresses satisfaction with the trial court's decision regarding a request for transcripts and subsequent instruction to the jury, defendant waives appellate review of the issue. *Carter*, 462 Mich at 214; *People v Fetterley*, 229 Mich App 511, 518-519; 583 NW2d 199 (1998). Thus, we can only address this issue in the context of defendant's claim that defense counsel's actions constituted ineffective assistance of counsel. See *People v Traver*, 502 Mich 23, 42 n 10; 917 NW2d 260 (2018) ("In this case, defendant must establish a valid claim of ineffective assistance of counsel in order for him to be entitled to relief on his waived claims of instructional error.").

## B. DEFENDANT'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT

In general, "[a] claim of ineffective assistance of counsel involves mixed questions of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). A trial court's findings of fact, if any, are reviewed for clear error and legal questions are reviewed de novo. *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). When a defendant did not raise this claim in a motion for a new trial or a request for a *Ginther*[3] hearing, this Court's "review is limited to mistakes apparent from the record." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016), citing *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). "This Court will not find trial counsel ineffective when an objection would have been futile; nor will it second-guess matters of trial strategy." *Ogilvie*, 341 Mich App at 34 (citations omitted).

Here, defendant cannot establish either element of his ineffectiveness claim: that his counsel was ineffective by not objecting to the trial court's responses to the jury's questions, and that his attorney's actions prejudiced him.

As to the first prong, we do not know why defense counsel did not object to the trial court's responses to the jury's questions, nor do we know why the jury asked for the recordings and transcripts of defendant's sons' testimony. We do know, however, that while the sons' testimony included some favorable evidence supporting the defense, it also was fraught with issues, as each testified that he had at some point lied to the police about the shooting. It is reasonable that defense counsel's strategy was to prevent the jury from scrutinizing the testimony more closely, as doing

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

so could have caused some harm, such as disbelieving defendant's account of the shooting. This Court has previously noted that experienced attorneys are "certainly aware that 'there are times when it is better not to object[,]' " even to obvious errors. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008), quoting *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Therefore, even if defense counsel could have legitimately objected to the trial court's response to the jury's request for testimony when considering MCR 2.513(P), the record supports that it was sound trial strategy to withhold that objection. Defendant has therefore failed to fulfill the first prong of the *Strickland* analysis. *Strickland*, 466 US at 688; *Shaw*, 315 Mich App at 672.

Defendant's claim also fails because he cannot show the alleged error affected the outcome of the trial. Under the second prong of the *Strickland* framework, defendant is required to prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. The jury considered extensive testimony and other evidence over the course of the seven-day trial. There is no indication from the record that the jury had any difficulty recalling defendant's testimony or analyzing the video of the incident, both of which were important to his self-defense claim. The jury found defendant guilty of the lesser offense of voluntary manslaughter (rather than second-degree murder), suggesting that the jury was able to reach a verdict by relying on its collective memory as instructed. Also, defendant speculates that the jury wanted to rehear the requested testimony because it did not understand the prosecution's case and would have focused on the parts of his sons' testimony that benefited him, but he does not explain why rehearing the testimony could have led to a worse, rather than better, result for him given the charge he was acquitted of. Thus, defendant fails to fulfill the second prong of the *Strickland* analysis, *Strickland*, 466 US at 694, as well.

## V. DEADLOCKED-JURY INSTRUCTIONS

Defendant next argues in his Standard 4 brief that the trial court improperly coerced a verdict when it issued the deadlocked-jury instruction, and he was denied the effective assistance of counsel by trial counsel's failure to object to the instruction. We disagree.

This Court generally reviews issues of instructional error de novo. *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019). But, as with defendant's claim regarding the jury's request to rehear testimony, this claim is waived because his trial counsel affirmatively agreed with the trial court's decision to deliver the standard deadlocked-jury instruction. *Carter*, 462 Mich at 214. Defendant, however, argues that he received ineffective assistance of counsel regarding this issue, so we will address it in that context. *Traver*, 502 Mich at 42 n 10. Accordingly, the same legal standard set forth above applies to defendant's argument that his attorney's failure to object to the instructions constituted ineffective assistance of counsel.

"When a jury indicates it cannot reach a unanimous verdict, a trial court may give a supplemental instruction—commonly known as an *Allen*[4] charge—to encourage the jury to continue deliberating." *Walker*, 504 Mich at 276-277 (citation omitted). "The goal of such an

---

[4] See *Allen v United States*, 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

instruction is to encourage further deliberation without coercing a verdict." *Id*. at 277 (citations omitted). "If the charge has the effect of forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error." *Id*. (quotation marks and citation omitted).

Our Supreme Court has adopted a standard deadlocked-jury instruction that has since been incorporated into our model jury instructions as M Crim JI 3.12. *Walker*, 504 Mich at 277; *People v Sullivan*, 392 Mich 324, 341; 220 NW2d 441 (1974). The model instruction is an example of an instruction that strikes the correct balance, but it is not the only instruction that may be properly given. "The relevant question is whether the instruction [could] cause a juror to abandon his [or her] conscientious dissent and defer to the majority solely for the sake of reaching agreement[.]" *Walker*, 504 Mich at 277-278 (quotation marks and citation omitted). "The inquiry must consider the factual context in which the instruction was given and is conducted on a case-by-case basis." *Id*.

In this case, near the end of the first day of deliberations, the jury sent a note to the trial court stating that it was unable to come to a unanimous verdict on count one, second-degree murder or the lesser offense of voluntary manslaughter. The jury also indicated that it did not think that it was able to reach a unanimous decision, further stating that because the remainder of the counts depended on its verdict for the first count, it did not know how to proceed.

The trial court read the deadlocked-jury instruction, M Crim JI 3.12. Then the trial court informed the jury members that the other counts did not depend on their verdict on the first count. The trial court directed the jury to read the jury instructions for the other counts and dismissed the jury for the day.

The next morning, the jury sent another note seeking clarification as to the second, third, and fourth counts by asking for guidance on which jury instructions pertained to each count. The jury stated that it wished to refer to the correct documents for each count. The jury asked if M Crim JI 7.25 (self-defense as to felon-in-possession of a firearm) and M Crim JI 11.38a (felon possessing firearm: specified felony) were applicable to the second count, i.e., felon-in-possession. The trial court answered the question affirmatively. The jury also asked if M Crim JI 11.34 (felony-firearm) applied to the third and fourth counts—the felony-firearm charges related to the first and second counts, respectively. The trial court answered in the affirmative. The jury finally asked if M Crim JI 11.34c (felony-firearm and self-defense) applied to all of the counts. The trial court clarified that it only applied to the third and fourth counts. Two hours later, the jury reached its verdict on all four counts.

Here, defendant has not identified any omission or failure to act on the part of his trial counsel to support his claim of ineffective assistance. The trial court read the standard deadlocked-jury instruction, M Crim JI 3.12, verbatim to the jury. The trial court did not deviate from the standard instruction or offer any comments that contradicted or otherwise interfered with its recitation of the instruction to the jury. Accordingly, the trial court's instruction was not improperly coercive because "the safest course to avoid juror coercion is to read the standard instruction." *People v Galloway*, 307 Mich App 151, 166; 858 NW2d 250 (2014), rev'd in part on other grounds 498 Mich 902 (2015). Because the trial court's instructions were not coercive, defendant has failed to demonstrate deficient performance or prejudice. "Trial counsel is not

required to advocate a meritless position." *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Affirmed.

/s/ Matthew S. Ackerman
/s/ Mariam S. Bazzi
/s/ Andrew J. Lievense